UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MATTHEW T.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:21-cv-02714-MJD-RLY |
| | ) |
| KILOLO KIJAKAZI, | ) |
| | ) |
| | ) |
| Defendant. | ) |

**ENTRY ON JUDICIAL REVIEW**

Claimant Matthew T. requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and Supplemental Security Income ("SSI") under Title XVI of the Act. *See* 42 U.S.C. § 423(d); 42 U.S.C. § 1382. For the reasons set forth below, the Court **REVERSES** the decision of the Commissioner.

---

[1] In an attempt to protect the privacy interest of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

## I. Background

Claimant applied for DIB and SSI in November 2018, alleging an onset of disability as of October 1, 2015. [Dkt. 6-8 at 2.] Claimant's applications were denied initially and again upon reconsideration, and a hearing was held before Administrative Law Judge Jessica Hodgson ("ALJ") on February 4, 2021. [Dkt. 6-3 at 2]. On March 30, 2021, ALJ Hodgson issued her determination that Claimant was not disabled. [Dkt. 6-2 at 13.] The Appeals Council then denied Claimant's request for review on August 17, 2021. *Id.* at 2. Claimant timely filed his Complaint on October 25, 2021, seeking judicial review of the ALJ's decision. [Dkt. 1.]

## II. Legal Standards

To be eligible for benefits, a claimant must have a disability pursuant to 42 U.S.C. § 423.[2] Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis: (1) if the claimant is engaged in substantial gainful activity, he is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits his ability to perform basic work activities, he is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment

---

[2] DIB and SSI claims are governed by separate statutes and regulations that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to those that apply to DIB.

2

appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three, and is able to perform his past relevant work, he is not disabled; and (5) if the claimant is not found to be disabled at step three, cannot perform his past relevant work, but can perform certain other available work, he is not disabled. 20 C.F.R. § 404.1520. Before continuing to step four, the ALJ must assess the claimant's residual functional capacity ("RFC") by "incorporat[ing] all of the claimant's limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (citing *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). If, at any step, the ALJ can make a conclusive finding that the claimant either is or is not disabled, then she need not progress to the next step of the analysis. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004) (citing 20 CFR § 404.1520(a)(4)).

    In reviewing a claimant's appeal, the Court will reverse only "if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). While an ALJ need not address every piece of evidence, she "must provide a 'logical bridge' between the evidence and [her] conclusions." *Varga*, 794 F.3d at 813 (quoting *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010)). Thus, an ALJ's decision "will be upheld if supported by substantial evidence," which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). This Court may not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Where substantial evidence supports the ALJ's

3

disability determination, the Court must affirm the decision even if "reasonable minds could differ" on whether the claimant is disabled. *Id.*

### III. ALJ Decision

ALJ Hodgson first determined that Claimant had not engaged in substantial gainful activity since the alleged onset date of October 1, 2015. [Dkt. 6-2 at 18.] At step two, the ALJ found that Claimant had the following severe impairments: "cardiomyopathy, sinus tachycardia, type II diabetes mellitus, diabetic peripheral neuropathy, status post-operative umbilical hernia repair, chronic dysmorphism of the right distal clavicle, generalized anxiety disorder, schizophrenia, unspecified mood disorder, alcohol dependence, cannabis use disorder, and stimulant use disorder." *Id*. at 18-19. The ALJ additionally found that Claimant's alleged GERD with esophagitis, peripheral edema, cellulitis of the bilateral lower extremity, venous stasis of the bilateral lower extremities, pneumonia, perinephric stranding of the right kidney, retroperitoneal perinephric hematoma, and signs of end-stage liver disease were non-severe. *Id.* at 19. At step three, the ALJ found that Claimant's impairments did not meet or equal a listed impairment during the relevant time period. *Id.* at 20. ALJ Hodgson then found that, during the relevant time period, Claimant had the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can sit for six hours at one time, but would need to alternate to standing position for three minutes, after every 30 minutes of sitting. The claimant can stand for six hours, but would need to alternate to seated position for five minutes, after every 30 minutes of standing. The claimant can walk for six hours, but would need to alternate to a seated position for five minutes, after every 30 minutes of walking. The claimant can push and pull as much as he can lift and carry; frequently operate foot controls with the bilateral lower extremities; and frequently operate hand controls with the bilateral upper extremities. The claimant can frequently reach overhead with the bilateral upper extremities; frequently reach in all other directions with the bilateral upper extremities; and frequently handle, finger and feel with the bilateral upper extremities. The claimant can occasionally climb ramps

and stairs; occasionally balance, stoop, kneel, crouch and crawl; and never climb ladders, ropes or scaffolds. The claimant can occasionally work at unprotected heights and tolerate occasional exposure to extreme cold, extreme heat, humidity and wetness, dust, odors, fumes and other pulmonary irritants. In addition, the claimant can never work around moving mechanical parts or operate a motor vehicle. The claimant can tolerate no more than "quiet" noise intensity levels. The claimant can perform simple, routine and repetitive tasks but not at a production rate pace (e.g. assembly line work). The claimant can use judgment to make simple work-related decisions. The claimant can occasionally interact with supervisors and co-workers; and can never interact with the public.

*Id.* at 24-25.

At step four, the ALJ found that Claimant was not able to perform his past relevant work during the relevant time period. *Id*. at 32. At step five, relying on testimony from a vocational expert ("VE"), the ALJ determined that Claimant was able to perform jobs that exist in significant numbers in the national economy. *Id*. at 33. Accordingly, ALJ Hodgson concluded Claimant was not disabled. *Id.* at 34.

### IV.  Discussion

Claimant advances two arguments in support of his request to overturn ALJ Hodgson's decision, both of which concern the ALJ ignoring relevant evidence suggestive of disability.

Claimant first argues that the ALJ failed to properly evaluate his schizophrenia, asserting that "the ALJ's repeated assertions that [Claimant] failed to present to healthcare providers outside emergency room environments with psychotic symptoms or other symptoms indicative of schizophrenia is simply contradicted repeatedly by the psychiatric records on file." [Dkt. 8 at 8.] Claimant contends that this issue is critical, since Claimant initially argued to the ALJ that he satisfied Listing 12.03 based on the severity of his schizophrenia. *Id.* at 10; *see* [Dkt. 6-3 at 9] (Claimant's attorney's opening statement at his hearing, arguing that Claimant should be found disabled at step 3 under listing 12.03 for schizophrenia).

Indeed, while the ALJ determined that Claimant's schizophrenia constituted a severe impairment, she repeatedly noted that "mental status examinations lacked significant findings during the adjudicatory period," and that "treating and examining sources generally did not observe any signs of evidence of significant distractibility, attentional deficits, dissociations, disorganized thought, auditory or visual hallucinations, preoccupations, psychomotor agitation, or other unusual thought content and/or abnormal behavior on examination." [Dkt. 6-2 at 23, 24, 29.] As Claimant points out, however, the record is replete with behavioral health records documenting ongoing schizophrenic symptoms—many of which the ALJ fails to acknowledge.

For example, Claimant's progress notes from Centerstone Behavioral Health consistently document numerous "marked" and "extreme" impairments in functioning, requiring "extensive professional intervention." *See*, *e.g.*, [Dkt. 6-48; Dkt. 6-49; Dkt. 6-51]. Mental status exams from Centerstone additionally detail Claimant's irritable mood, labile affect, pressured speech, delirious attention, distracted concentration, disorganized thought process, tangential and disorganized associations, auditory hallucinations, persecutory and paranoid delusions, present obsessions, severely impaired judgment, poor insight, and impaired cognition. *See*, *e.g.*, [Dkt. 6-48 at 35, 41-42; Dkt. 6-51 at 22]. This evidence, wholly ignored by the ALJ, blatantly contradicts her characterization of Claimant's behavioral health records. Further, these records are supported by Claimant's hearing testimony regarding an "[i]nability to function" due to his worsening "psychiatric problems," including auditory and visual hallucinations. *See* [Dkt. 6-3 at 16-17, 22-23].

In response, the Commissioner argues that the ALJ properly found Claimant's schizophrenia did not satisfy Listing 12.03. [Dkt. 12 at 11.] While the Court makes no comment

6

on whether Claimant meets Listing 12.03, it was error for ALJ Hodgson to ignore evidence supporting Claimant's disability claim in the way that she did. While not required to "mention every piece of evidence," an ALJ "has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (citing *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009); *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008)); *Varga*, 794 F.3d at 813 (quoting *O'Connor-Spinner*, 627 F.3d at 618). By mischaracterizing and ultimately downplaying Claimant's mental status exams, ALJ Hodgson failed to fulfill that obligation here, and thus remand is required. On remand, the ALJ shall review all relevant evidence of Claimant's schizophrenia, taking care not to overlook or ignore evidence that bolsters Claimant's disability claim.

  Similarly, Claimant also argues that the ALJ erred by failing to properly consider his chronic edema and resulting limitations. [Dkt. 8 at 11.] At his hearing, Claimant testified that his lower legs are "generally always swollen," causing a daily "loss of sensation and/or burning" that "feels like bee stings." [Dkt. 6-3 at 28.] He averred that this results in several physical limitations, such as an inability to be on his feet longer than 20-30 minutes. *Id.* at 29. Claimant also testified that his doctors have instructed him to prop his legs up above his heart as frequently as possible. *Id.* As such, Claimant sleeps with his legs propped up every night, and sits with his legs propped up for about "six hours during the day." *Id.* at 30. He explained that other treatments, such as compression cloths and ointments, "help with the swelling somewhat but never completely. Not with the pain at all, no." *Id.* at 33. In response to questioning from the ALJ, the VE then testified that a limitation requiring that an individual "elevate his feet" during

the workday, whether it be on a footstool, at hip-level, or at heart-level, would be work-preclusive. *Id.* at 42-43.

In her decision, ALJ Hodgson found that Claimant's edema was non-severe, stating as follows:

> As for the claimant's peripheral edema of the lower extremities, the record reveals the claimant's symptoms have been treated, conservatively with medication, rest, ice, and elevation of the extremities, and the claimant has not required further evaluation or emergency room treatment for recurrent cellulitis or venous stasis of the bilateral lower extremities.

[Dkt. 6-2 at 19.] This is the sole mention of Claimant's edema in the ALJ's decision, and Claimant's RFC contains no edema-related limitations. Critically, despite Claimant's testimony regarding the need to elevate his legs and the VE's testimony that such a limitation would be work-preclusive, the ALJ did not address whether Claimant would need to elevate his legs at work. In fact, the ALJ ignores the evidence of Claimant's edema after finding this a non-severe impairment at step two. This is especially troubling since ALJs are required to "consider the combined effect" of a claimant's severe and non-severe impairments. 20 CFR § 404.1523(c). Moreover, the ALJ explicitly noted that Claimant's edema symptoms are treated with "medication, rest, ice, and ***elevation of the extremities***." [Dkt. 6-2 at 19] (emphasis added). The ALJ therefore should have included the need to elevate his legs in Claimant's RFC or otherwise explained why she felt such a limitation was not necessary.

The Commissioner responds that the ALJ properly accounted for Claimant's edema, [Dkt. 12 at 16], but this argument is unpersuasive. ALJ Hodgson has again chosen to ignore pertinent evidence suggestive of disability. *See Denton,* 596 F.3d at 425 (citing *Myles,* 582 F.3d at 678; *Getch,* 539 F.3d at 480). This, too, constitutes reversible error. Accordingly, the ALJ's decision is

not based on substantial evidence and remand is required. On remand, the ALJ shall consider all evidence of Claimant's edema and resulting limitations, especially where such limitations warrant a finding of disability.

## V. Conclusion

For the reasons stated above, the Commissioner's decision is **REVERSED** and **REMANDED for further proceedings consistent with this Order**.

SO ORDERED.

Dated: 21 JUL 2022

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on
all ECF-registered counsel of record via
email generated by the Court's ECF system.